**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MARIA GROOM,

                Plaintiff,

    -v-                                           1:22-CV-01080 (AJB/ML)

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, et al.,

                Defendants.

_____

**APPEARANCES:**                                 **OF COUNSEL:**

BERLINGIERI LAW PLLC              CHRISTOPHER BERLINGIERI, ESQ.
Attorneys for Plaintiff
244 Fifth Avenue, Suite F276
New York, NY 10001

THE WILLIS LAW GROUP PLLC       JOSEPH M. STANCATI, ESQ.
Attorneys for Plaintiff
60 Broadhollow Road
Melville, NY 11747

NEW YORK STATE OFFICE            KONSTANDINOS D. LERIS, ESQ.
OF THE ATTORNEY GENERAL     NOAH C. ENGELHART, ESQ.
Attorneys for Defendants
The Capitol
Albany, NY 12224

Hon. Anthony Brindisi, U.S. District Judge:

<u>**DECISION & ORDER**</u>

## I.    INTRODUCTION

On October 19, 2022, plaintiff Maria Groom ("Groom"), a former employee of the New York State Department of Corrections and Community Supervision ("DOCCS"), filed this action alleging violations of her First, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983. Her complaint also alleges that defendants discriminated against Groom because of her sex in violation of Title VII of the Civil Rights Act of 1964 and retaliated against her in violation of the statute. The complaint further alleges that defendants violated the Americans with Disability Act ("ADA") by discriminating against Groom in her employment because of a disability and retaliating against her for seeking relief. The complaint also brings related state law claims. *See* Dkt. No. 1.

The action was initially assigned to Senior U.S. District Judge Thomas J. McAvoy. After the parties filed a stipulation that discontinued a litany of the claims raised in the complaint, *see* Dkt. No. 29-1,[1] the following claims remained at issue: discrimination and retaliation under Title

---

[1]    The parties stipulated to the dismissal of the following parties and claims:

1. All claims asserted against Defendant Anthony J. Annucci in Plaintiff's Complaint, ECF No. 1 ("Plaintiff's Complaint");
2. All claims asserted against Defendant Wallkill Correctional Facility in Plaintiff's Complaint;
3. All official and/or professional capacity claims asserted against Defendants Phil Melecio, Vincent Brugger, Ian Huckaba, William Purdy, Kenneth Cady, and Kathryn Rifflard in Plaintiff's Complaint;
4. The First and Fifth Amendment claims identified in Plaintiff's First Cause of Action "For Violations of 42 U.S.C. § 1983" asserted in paragraphs 183-191 of Plaintiff's Complaint;
5. The claims asserted against Defendant DOCCS in Plaintiff's First Cause of Action "For Violations of 42 U.S.C. § 1983" in paragraphs 183-191 of Plaintiff's Complaint;
6. All claims asserted in Plaintiff's Second Cause of Action "For Violations of 42 U.S.C. § 1983 Monell Liability (As To Defendants DOCCS, Wallkill Facility, Annucci, and Melicio)" in paragraphs 192-198 of Plaintiff's Complaint;
7. All claims asserted against Defendant DOCCS in Plaintiff's Third Cause of Action "For Retaliation under 42 U.S.C. § 1983 and The First Amendment" in paragraphs 199-203 of Plaintiff's Complaint;

VII; discrimination and retaliation under the ADA; First Amendment retaliation; and state-law claims for discrimination under the New York State Human Rights Law ("NYSHRL").

On September 30, 2024, defendants moved for summary judgment on all of plaintiff's remaining federal claims. *See* Dkt. No. 53-1 at 9–10. Additionally, defendants seek dismissal of Groom's state-law claims on the merits or request that the Court decline to exercise supplemental jurisdiction over them if it finds dismissal of the federal claims are warranted. *Id.* at 10. After defendants' motion was fully briefed, Dkt. Nos. 53, 59, 63, the matter was reassigned to this Court for all further proceedings, Dkt. No. 64.

This case arises out of Groom's employment with DOCCS as a Correction Officer at Wallkill Correctional Facility ("Wallkill"). On August 16, 2021, Groom sat in a chair in a housing unit at Wallkill, which an inmate had covered in a liquid. That liquid saturated the rear of Groom's pants and soaked through her underwear. The response to this incident by DOCCS and the individual defendants—Groom's supervisors and other officials and staff members at Wallkill—provides the basis for this lawsuit.

Groom contends that the way defendants responded to the incident violated her rights under state and federal law. Groom expressed serious health concerns about her exposure to an

---

8. The racial discrimination, color discrimination, and religious discrimination claims asserted against Defendant DOCCS in Plaintiff's Fourth Cause of Action "For Discrimination Under Title VII" in paragraphs 204-207 of Plaintiff's Complaint;

9. All claims asserted in the Tenth Cause of Action "For Negligence Respondeat Superior (Against Defendant DOCCS and Wallkill Facility)" asserted in paragraphs 230-233 of Plaintiff's Complaint;

10. All claims asserted in the Eleventh Cause of Action "For Negligent Supervision, Retention and Training (Against Defendant DOCCS and Wallkill Facility)" asserted in paragraphs 234-239 of Plaintiff's Complaint;

11. All claims asserted in the Twelfth Cause of Action "For Negligent Infliction of Emotional Distress (Against All Individual Defendants)" asserted in paragraphs 240-249 of Plaintiff's Complaint; [and]

12. All claims asserted in the Thirteenth Cause of Action "For Slander (Against Defendant Cady)" asserted in paragraphs 250-254 of Plaintiff's Complaint.

Dkt. No. 29-1.

inmate's unknown bodily fluids to her supervisors. These supervisors did little to assist her or to investigate the situation appropriately. Defendants' unwillingness to take the episode seriously, Groom claims, caused her distress and undermined her ability to return to work, eventually leading her to leave her employment with DOCCS.

## II.    BACKGROUND[2]

Plaintiff Maria Groom was a correction officer at Wallkill Correctional Facility during the times relevant to this action. Defendants' Statement of Material Facts ("Defs.' Facts"), Dkt. No. 53-2 ¶ 1. On August 16, 2021, Groom sat on a wooden chair at Wallkill that was covered in an unknown liquid. *Id.* ¶ 8. Later testing revealed that the substance was urine from an inmate housed in the unit where Groom worked at Wallkill. Pl.'s Resp. to Defs.' Facts of Material Facts ("Pl.'s Facts."), Dkt. No. 59-1 ¶ 8. No one threw, tossed, or expelled the substance at Groom. Defs.' Facts ¶ 9.

Fifteen or twenty minutes after Groom sat in the liquid, another correction officer, who was also a woman, relieved her of her post. *Id.* ¶ 10; Pl.'s Facts ¶ 10. Groom was provided with a change of pants and underwear at the facility. Defs.' Facts ¶ 11. She was also "permitted" to go to the medical facility at Wallkill for an evaluation by facility nursing staff. *Id.* ¶ 12. Groom was also allowed to return to her home to shower and change clothes. *Id.* ¶ 13. Groom then returned to work. *Id.* ¶ 14. The parties dispute whether Groom returned voluntarily or because her superior officer told her to return. *Compare* Defs.' Facts ¶ 14 and Pl.'s Facts ¶ 14.

Groom indicates that "the Wallkill Facility did not treat the incident immediately as an aggravated harassment." *See* Compl., Dkt. No. 1 ¶ 122. But Defendants contend that the events

---

[2] These facts are taken from a comparison of the parties' Local Rule 56.1 statements and a review of the underlying record. *See* Dkt. Nos. 53-2, 59-1. The Court will cite to defendants' local rule statement for material facts which are uncontested and note where the parties disagree with appropriate citations to plaintiff's response and to the record provided by the parties.

of August 16, 2021, did not qualify as "Aggravated Harassment of an Employee by an Inmate" under DOCCS rules, as no evidence suggested that an inmate threw, tossed, or expelled the bodily fluid at Groom. Defs.' Facts ¶ 15. Defendant Ian Huckaba ("Huckaba"), a correction lieutenant at Wallkill, took this position when he discussed the incident with Groom on the day of the incident. *Id.* ¶ 16.

Groom agrees that defendants offered this rationale as their explanation for not seeking to charge an inmate with this offense but points out that defendant Phillip Melecio ("Melecio"), Wallkill's superintendent, "elevated the incident to aggravated harassment" after Groom met with DOCCS's Office of Special Investigations ("OSI") on August 27, 2021. Pl.'s Facts ¶ 15. Lieutenant Huckaba informed Danielle Glebocki, Acting Superintendent/Deputy Superintendent of Programs, about the incident within two days of the event. *Id.* ¶ 19. The parties do not dispute that neither DOCCS nor any individual defendant had the authority to charge an inmate with aggravated harassment. Defs.' Facts ¶ 32; Pl.'s Facts ¶ 32.

The day after the incident, Groom received additional medical care outside the Wallkill facility. Defs.' Facts ¶ 18. Groom points out that doctors at the emergency room she visited ordered that a rape kit should be performed on Groom because of her exposure to an unknown substance. Pl.'s Facts ¶ 18. Defendants permitted Groom to take time off from work after the incident. Defs.' Facts ¶ 17. That time off was medical leave. *Id.*

As part of her medical leave, Groom had to submit documentation about her medical condition. *Id.* ¶ 20. Per DOCCS policy, medical leave submissions needed to contain certain information. *Id.* Some of Groom's submissions lacked sufficient information and did not conform to the policy's requirements. *Id.* ¶ 21. Defendants gave Groom a chance to correct the

forms. *Id.* ¶ 22. Groom fixed the paperwork, after which defendants did not raise any additional alerts about her documentation. *Id.* ¶ 23.

Groom never returned to work following the incident on August 16, 2021. *Id.* ¶ 38. Groom submitted her resignation, and neither DOCCS nor any of the individual defendants terminated Groom's employment. *Id.* ¶ 43; *see also* Pl.'s Depo., Dkt. No. 53-15 at 30 ("Q: When did you leave your employment with the Department of Corrections? A: So I officially resigned from the Department of Corrections in June of 2022."); Pl.'s Depo., Dkt. No. 53-15 at 261–262 ("Q: Ultimately, you submitted a resignation from the Department of Corrections, right? A: Correct.").

Issues have arisen throughout the litigation about what happened to Groom's soiled clothing, which she had taken off at Wallkill after the incident. The parties agree that defendant Kenneth Cady ("Cady"), a Wallkill correction captain, stored the clothing in his office. Defs.' Facts ¶ 31. Groom did not know how her clothing was stored after the incident. *Id.* ¶ 30. In any case, DOCCS did not have the ability to perform DNA testing on the clothing. *Id.* ¶ 29.

Groom sought workers' compensation after she became unable to return to work due to the incident. The parties dispute whether DOCCS or any of the individual defendants could act to "controvert" Groom's workers' compensation claim. *Compare* Defs.' Facts ¶ 33 with Pl.'s Facts ¶ 33. Defendants assert that "DOCCS may *request* that the New York State Insurance Fund ("NYSIF") controvert a Worker's Compensation claim," but only the NYSIF itself possess the discretion to do so. Defs.' Facts ¶ 34 (emphasis added). Regardless, it is undisputed that none of the defendants has any authority to determine the outcome of a workers' compensation claim. *Id.* ¶ 35. Only the New York State Workers' Compensation Board has the authority to make a final determination on a claim. *Id.* ¶ 36.

As of the parties' latest filings, Groom is still waiting for the final resolution of her claim, *id.* ¶ 37, which she contends defendants "actively worked to have . . . denied." Pl.'s Facts ¶ 34. She alleges that defendant Kathryn Rifflard ("Rifflard"), a member of Wallkill's personnel department, requested that NYSIF deny her claim. *Id.* ¶ 33; Defs.' Mot., Dkt. No. 53-1 at 42. Moreover, defendant Vincent Brugger ("Brugger"), Acting Deputy Superintendent of Administration at Wallkill, wrote to Groom that her claim was being denied because her injuries were not work-related or were due to a pre-existing condition. Pl.'s Facts ¶ 33. At his deposition, Brugger described his actions as "controverting" Groom's workers' compensation claim. *Id.*

### III.    STANDARD OF REVIEW

On a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law. *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999); Fed. R. Civ. P. 56(a). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant can establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment, who must produce evidence establishing a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A party

opposing a properly supported motion for summary judgment may not rest upon unsubstantiated speculation, conclusory allegations, or 'mere allegations or denials' asserted in her pleadings. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir. 1994); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). At this stage, the Court's task "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). "Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." *Id.*

## IV.    ANALYSIS

### A.    Preliminary Issues

At the outset, it is difficult to determine which claims Groom originally asserted in her Complaint, which she stipulated to dismiss, which she believes remain, and which are in fact pending—let alone against whom. *See* Dkt. No. 1 at 21–31; Dkt. No. 29-1; Dkt. No. 30.

In her opposition papers, Groom purports to contest defendants' motion for summary judgment "as to DOCCS for her claims of discrimination and hostile work environment on the basis of sex and gender and retaliation under Title VII[,] as well as her claims under the Fourteenth Amendment due to 'sex discrimination and gender bias' at Wallkill Correctional Facility[.]" Dkt. No. 59 at 2. She further states: "As for the remaining claims against the individual Defendants, Plaintiff opposes the motion for her claims under the First Amendment for unlawful retaliation; all NYSHRL claims, specifically discrimination on the basis of sex, disability, retaliation and aiding and abetting discrimination as to the individuals only." Dkt. No. 59 at 3. Groom also "opposes the motion on the issue of 'qualified immunity'." Dkt. No. 59 at 3.

The Court will treat these representations as a preliminary winnowing mechanism.  To the extent any claim is not identified above or elsewhere in Groom's opposition papers, the Court deems it abandoned.  *See Harris v. Tioga Cnty.*, 663 F. Supp. 3d 212, 232 (N.D.N.Y. 2023), *appeal dismissed,* 2024 WL 4179651 (2d Cir. Sept. 13, 2024) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.") (quoting *Frantti v. New York*, 414 F. Supp. 3d 257, 291 (N.D.N.Y. 2019)).

### B.    Title VII

Defendants first seek dismissal of Groom's Title VII discrimination claims.  *See* Dkt. No. 53-1 at 12–35.  Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1).

This anti-discrimination provision's aim "is to prevent 'disparate treatment of men and women in employment.'"  *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)).  Title VII claims are analyzed "under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*."  *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 108 (2d Cir. 2019).  The Supreme Court, in *McDonnell Douglas*, "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases."  *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).

"At the first stage," of this burden-shifting framework, "the plaintiff bears the burden of establishing a '*prima facie*' case."  *Id.* (citing *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S.

248, 252–53 (1981)).  If a plaintiff meets the 'minimal' requirements of this burden, they have "create[d] a presumption that the employer unlawfully discriminated against the employee." *Id.* (quoting *Burdine*, 450 U.S. at 254).  The burden then shifts to the defendant, who must "'[produce] evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *Id.* at 128–29 (quoting *Hicks*, 509 U.S. at 506–507).  If the defendant offers such an explanation, the burden shifts back to the plaintiff, who must "demonstrate that the proffered reason was not the true reason for the employment decision."  *Id.* (quoting *Burdine*, 450 U.S. at 256).

Defendants contend that Plaintiff cannot make out a *prima facie* case.  *See* Defs.' Mot., Dkt. No. 53-1 at 12.  To make out a *prima facie* case for Title VII discrimination, "a plaintiff must show that: (1) [s]he is a member of a protected class; (2) [s]he performed the job satisfactorily; (3) an adverse employment action took place; and (4) the action occurred under circumstances giving rise to an inference of discrimination."  *Jackson v. New York City Transit*, 348 F. App'x 666, 668 (2d Cir. 2009) (summary order) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Defendants concede that Groom is a member of a protected class and that she performed her job satisfactorily.  *See* Dkt. No. 53-1 at 12 n.2 ("For purposes of this motion, Defendants do not contest that Plaintiff is a member of a protected class and that she was qualified for her position as a Correction Officer.").  As such, the Court will focus its analysis on the latter two elements.

### i.    Adverse Employment Action

Defendants argue that no evidence reveals that Groom suffered any adverse employment action.  *See* Defs.' Mot., Dkt. No. 53-1 at 13–29.  In response, Groom points to sixteen

'instances' she contends "can be considered" adverse employment actions.[3]  *See* Pl.'s Resp., Dkt. No. 59 at 6–7.

Groom's briefing does not particularly analyze any of these sixteen incidents.  *See, e.g.*, Pl.'s Resp., Dkt. No. 59 at 7 ("After Plaintiff's incident of sitting in the substance put on her chair by an inmate, Defendant suffered Plaintiff to adverse action on the basis of her sex as shown in points 1-16 above." [sic]).  Instead, Groom asserts that defendants' conduct reflected a lack of seriousness regarding the episode and a failure to take appropriate action.  She claims this conduct and defendants' accompanying insouciant reaction resulted in her constructive discharge and thus constituted one or more adverse employment actions.  The Court will address Groom's generalized arguments on this point, as she does not provide detailed analysis or evidentiary support for the individual 'instances' she cites.

---

[3]    The sixteen instances that Groom believes "can be considered adverse action":

(1) Plaintiff not being sent to outside medical treatment;
(2) lack of guidance;
(3) Plaintiff being asked to come back to work;
(4) Defendant Huckaba's alleged failure to report the incident;
(5) The incident not being treated as aggravated harassment;
(6) Defendants and other DOCCS' employees suggesting the liquid was just water;
(7) Defendant Huckaba's conduct during the phone call with Plaintiff's husband on August 16, 2021;
(8) Defendant Purdy's conduct during the phone call with Plaintiff on August 18, 2021;
(9) Defendant Cady's conduct during the phone call with Plaintiff on August 25, 2021;
(10) Instances of Plaintiff's medical paperwork not being seen by Defendant Purdy;
(11) Defendant Purdy's designation of certain medical documentation as non-conforming;
(12) The delay in Plaintiff being put back on payroll after she elected to use her vacation accruals;
(13) The alleged denial of Plaintiff's Worker's Compensation claim;
(14) The conduct of the OSI investigation;
(15) hostile work environment[]; and
(16) constructive discharge.

Pl.'s Resp., Dkt. No. 59 at 6–7

On their face, most of these "incidents" do not constitute materially adverse changes in Groom's terms of employment; rather, they are inconveniences and alterations of job responsibilities.  Constructive discharge, if proved, is clearly an adverse employment action.  Sexual harassment is another category of sex discrimination that uses a different legal standard, as Plaintiff admits.

In the context of a Title VII claim, courts "define an adverse employment action as a materially adverse change in the terms [or] conditions of employment." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (quoting *Sanders v. N.Y. City Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)) (internal citations omitted). Such an action "is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits[,] diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (quoting *Terry*, 336 F.3d at 138); *see also Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 358 (2024) (noting that the anti-discrimination provision "flatly 'prevent[s] injury to individuals based on' status without distinguishing between significant and less significant harms") (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63, (2006)).

Groom argues she suffered adverse employment actions when her supervisors appeared not to believe that she had sat in an unknown male bodily fluid. Groom also points to Lt. Huckaba's failure to call any female officers to help her that day. And when Groom's husband, also a correction officer at Wallkill, raised plaintiff's concerns to Lt. Huckaba, the lieutenant seemed to brush him off. Groom further asserts that defendants initially rejected her request for medical leave, though she admits they approved the request after she corrected the deficient paperwork. She also claims that defendants opposed her workers' compensation claim. Pl.'s Brief, Dkt. No. 59 at 7–10.

Even viewed in the light most favorable to Groom, the non-movant, no reasonable juror could view these events—at least to the extent these events are supported by record evidence—as

an "adverse employment action." Importantly, Groom points to no legally cognizable change in her circumstances, only her subjective dissatisfaction with how defendants reacted.

The Court acknowledges the indignation and sense of disrespect plaintiff experienced when her supervisors and colleagues appeared not to believe her. She has presented evidence that her supervisors failed to treat the incident with appropriate seriousness, and that their apparent indifference—verging on callousness—eroded her sense of safety and support in the workplace, a setting in which anxiety about safety, even apart from this episode, would not have been unreasonable. The slow processing of her medical claims only served to further compound the distress she experienced.

Even so, the record evidence establishes that Groom initially submitted some incomplete forms. The record further establishes that once corrected, defendants processed the complete documents when they received them and did not request additional, unnecessary information from Groom. Although Groom has produced evidence that defendants expressed a desire to prevent her from recovering workers' compensation from the incident, the evidence is clear that NYSIF, not defendants, was responsible for determining whether to support her claim.[4]

Absent some identifiable work-related harm, the inconvenience and disrespect Groom experienced do not constitute "adverse employment actions." Again, "[c]ourts in the Second Circuit have explained that examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation. *Johnson v. Rockland Cnty. BOCES*, 2022 WL 4538452, at *12 (S.D.N.Y. Sept. 28, 2022) (internal alterations and citations omitted).

---

[4] Nor has Groom's claim been resolved. The Court, therefore, cannot find that Groom suffered an adverse employment action caused by defendants with respect to the workers' compensation claim.

In short, Groom has not pointed the Court to any cases where this sort of indifference or disbelief—which did not result in any change in position, salary, or title or other identifiable job-related harm—could be considered adverse employment actions. Instead, the evidence in the record demonstrates that defendants investigated the events in question, provided Groom with medical leave, and did not terminate her from her position when she required time off. Groom has not offered evidence of any adverse employment action and thus has not made out a *prima facie* case in this respect.[5]

*Burns v. City of Utica* helps guide the Court's analysis here. 590 F. App'x 44 (2d Cir. 2014) (summary order). In *Burns*, the plaintiff, a firefighter in Utica, New York, alleged she was sexually assaulted by a fellow firefighter while on duty. *Id.* at 46. She filed a formal complaint and was subsequently evaluated by a mental health professional, who diagnosed her with post-traumatic stress disorder ("PTSD"). *Id.* at 47. As a result, she applied for disability benefits. *Id.* The City required her to undergo an independent medical evaluation, during which another doctor concluded she did not have PTSD. *Id.* Relying on that second opinion, the City denied her claim. Although the plaintiff appealed, an arbitrator upheld the denial. *Id.* Separately, the fire chief suspended the firefighter who allegedly assaulted the plaintiff, but an arbitration panel overturned the suspension. *Id.* When the plaintiff returned to work, she was forced to work alongside her alleged assailant, triggering repeated anxiety attacks. *Id.* She later filed suit, alleging sexual harassment and Title VII retaliation.

The Second Circuit upheld the district court's dismissal of the plaintiff's Title VII claim. *Id.* at 49. Though it was undisputed that the plaintiff was not terminated or demoted, she argued

---

[5] Defendants' failure to charge an inmate with aggravated harassment of an employee is not an adverse employment action. Plaintiff disagrees with this charging decision, but the decision did not affect the terms of Plaintiff's employment.

she suffered other adverse actions.  Specifically, the plaintiff asserted she was: "(1) directed to return to work under unsuitable conditions[,] which resulted in her taking an unwanted, unpaid leave of absence[;] (2) placed in a 'negative sick leave situation' as a result of the City's denial of her disability claim; and (3) required to undergo . . . remedial training before returning to work."  *Id.*  The circuit panel rejected the claims, holding that "[t]hese other actions [were] neither adverse under Title VII, nor attributable to any action taken by the City."  *Id.*

The *Burns* panel noted that the requirement to return to work arose only after an independent arbitrator determined the plaintiff was not disabled:"[t]hat decision was not an adverse employment action under Title VII."  *Id.*  "Moreover, the fact that [plaintiff] lost sick leave pay was not the result of any retaliation by the City—the days of work she missed were not covered by sick leave because the arbitrator determined that [she] was not disabled.  *Id.*  That plaintiff "was required to undergo remedial training . . . was not an adverse action[;] [r]ather, requiring such training was a reasonable safety precaution to ensure that [plaintiff] could perform her duties as a firefighter after being absent . . . for several months.  *Id.*

Like the plaintiff in *Burns*, defendants did not terminate Groom's employment.  They did not change her hours, reassign her to a less desirable position, dock her pay, or interfere with her use of sick leave.  Although defendants indicated to the NYSIF that Groom was ineligible for workers' compensation, the parties agree that defendants are not the decision-makers in that process.  Moreover, her workers' compensation claim remains unresolved.

Groom "need show only *some* injury respecting her employment terms or conditions." *Muldrow*, 601 U.S. at 359 (emphasis added).  Such injury "must have left her worse off, but need not have left her significantly so."  *Id.*  However, Groom has not identified an injury by

defendants that left her worse off, nor any action by defendants that materially altered the terms or conditions of her employment.

Groom also contends she was constructively discharged her position as a correction officer. She argues that the working conditions had become so intolerable that no reasonable person in her place could be expected to remain. In support, Groom cites several factors: the findings of "non-conforming" notes, the exhaustion of her accrued leave time against her wishes, the controverting of her workers' compensation claim, comments suggesting that the bodily fluid was only water, and the mishandling of the related investigation, including the disposal of her pants. *See* Pl.'s Resp., Dkt. No. 59 at 10–11.

A constructive discharge can constitute a type of "adverse employment action." *Cruz v. Southerton*, 2023 WL 8810144, at *6 (S.D.N.Y. Dec. 20, 2023) (citing *Shapiro v. NY.C. Dep't of Educ.*, 561 F. Supp. 2d 413, 424 (S.D.N.Y. 2008)); *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004). "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Williams v. PMA Companies, Inc.*, 564 F. Supp. 3d 32, 48 (N.D.N.Y. 2021) (Suddaby, J.). "This inquiry is an objective one," and it imposes a "demanding standard." *Id.* "Such a claim requires the employee to show both (1) that there is evidence of the employer's intent to create an intolerable environment that forces the employee to resign, and (2) that the evidence shows that a reasonable person would have found the work conditions so intolerable that he would have felt compelled to resign." *Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 308 (2d Cir. 2017) (quoting *Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 49 (2d Cir. 2014) (summary order)). "Because a reasonable person encounters life's circumstances cumulatively and not individually," *id.*, "a constructive discharge claim can be

premised on the cumulative [e]ffect of a number of adverse conditions in the workplace," *Back v. Hapoalim*, 2024 WL 4746263, at *3 (2d Cir. Nov. 12, 2024) (quoting *Terry*, 336 F.3d at 153 n.24)).

Here, Groom fails to point to any record evidence from which a reasonable juror could conclude that she was constructively discharged. Even viewed in the light most favorable to her, Groom's allegations that defendants acted in bad faith by questioning whether she sat in bodily fluids, forcing her to use vacation time when she could not return to work, and disputing her workers' compensation claim—even considered cumulatively—do not meet the threshold necessary for constructive discharge. The Court has not found any legal authority, and plaintiff has not cited any, to support the assertion that defendants' conduct could be viewed by a rational fact-finder as being intended to force her resignation or that defendants' conduct would have compelled a reasonable person to resign.

To the contrary, the undisputed record reflects that defendants allowed her time off to recover, encouraged her to return to work, investigated the incident, and processed the corrected paperwork she submitted. Plaintiff may have felt that her coworkers minimized the trauma she experienced and the dangers she faced. Even so, she has not pointed to any record evidence that suggests that defendants purposefully created conditions so severe that a reasonable person in her position would have felt compelled to resign.

"[C]onstructive discharge cannot be shown simply by the fact that the employee was unhappy with the nature of her assignments or criticism of her work, or where the employee found the working conditions merely difficult or unpleasant." *Green v. Town of E. Haven*, 952 F.3d 394, 404 (2d Cir. 2020) (internal quotation omitted). As such, "'[c]onduct that is not severe or pervasive enough to create an *objectively* hostile or abusive work environment—an

environment *that a reasonable person* would find hostile or abusive—is beyond Title VII's purview." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (emphasis added in original)).

Plaintiff further contends that she suffered from a hostile work environment because of her sex. "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Bamba v. U.S. Dep't of Homeland Sec.-FPS*, 2023 WL 6519628, at *7 (S.D.N.Y. July 26, 2023), *report and recommendation adopted,* 2023 WL 5928327 (S.D.N.Y. Sept. 12, 2023), *aff'd sub nom. Bamba v. United States Dep't of Homeland Sec.*, 2025 WL 670188 (2d Cir. Mar. 3, 2025) (internal citations omitted).

"A hostile work environment claim requires a showing (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Gill-Dratyon v. New York State Educ. Dep't*, 2025 WL 872997, at *12 (S.D.N.Y. Mar. 20, 2025) (quoting *Dixon v. City of New York*, 2025 WL 50140, at *10 (S.D.N.Y. Jan. 7, 2025)); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996). "Although the harassment need not take the form of sexual advances or other explicitly sexual conduct in order to be actionable under Title VII, the plaintiff is required to establish that the harassment complained of was based on her gender." *Macri v. Herkimer Cnty.*, 2023 WL 6295590, at *3 (N.D.N.Y. Sept. 27, 2023) (Sharpe, J.) (quoting *Funk v. F & K Supply, Inc.*, 43 F. Supp. 2d 205, 215 (N.D.N.Y. 1999) (McAvoy, J.)); *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998).

"In order to show that the allegedly harassing conduct was motivated by gender, or that

'gender played a motivating part in an employment decision,' a female plaintiff must show that one of the reasons for the harassment or the decision was that she 'was a woman.'" *Williams v. Plaza Rehab. & Nursing Ctr.*, 2024 WL 3385642, at *5 (S.D.N.Y. July 12, 2024) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989)).

Groom contends that she faced a hostile environment because of her sex (and disability).[6] In support of this claim, she cites fourteen of the sixteen 'incidents' she contends were adverse employment actions. *See supra* n.3; Pl.'s Resp. Dkt. No. 59 at 16.

Groom's argument here is conclusory, and she makes no effort to explain in any part how any of these alleged incidents created a situation sufficiently severe to alter the conditions of her employment. She also offers no argument about how a fact-finder could interpret this conduct as occurring because of her sex or a disability. She does not explain anything about the disability she suffered from (or was perceived to suffer from). Groom implies that Defendants treated her differently because of her sex, but points to no evidence that supports this extrapolation.

The Court finds that Groom has not identified evidence from which a reasonable juror could conclude that she was subjected to harassment by defendants. Although Groom references numerous incidents, she does not explain how they altered her working conditions, and the Court determines that, taken together, these events do not rise to anywhere near the level of severe or pervasive harassment based on sex or disability. A reasonable juror could only conclude that Groom faced skepticism regarding the substance in which she sat, that some colleagues and supervisors believed it was water, that supervisors assessed the incident differently than Groom did, and that there were disputes over her leave and workers' compensation claim. These issues

---

[6] Groom also claims she faced a hostile work environment based on her disability and appears to cite these instances in support of that basis too. But she does not elaborate further on any particularities: "trying to separate out which instances are motivated by sex/gender and which are motivated [by] other factors (i.e., disability) is artificial and, in any event, best left to a jury." Pl.'s Resp., Dkt. No. 59 at 15.

represent disagreements about workplace matters rather than evidence of severe and pervasive discrimination.

The unpleasant workplace behavior here, standing alone, does not constitute actionable harassment. *See, e.g.*, *Boise v. Boufford*, 121 F. App'x 890, 893 (2d Cir. 2005) (summary order) (holding that complaints about a supervisor's failure to praise plaintiff's work and rude treatment by colleagues were "inadequate to demonstrate . . . an 'objectively hostile or abusive work environment.'") (quoting *Petrosino*, 385 F.3d at 221). Moreover, Groom points to no evidence from which a reasonable juror could conclude that these incidents occurred, even in part, because of her sex or a disability.

### ii.    Inference of Discrimination

Defendants next argue that, even if Groom could establish one or more adverse employment actions, she cannot show that the action occurred under circumstances giving rise to even a minimal inference of discrimination. The undisputed facts demonstrate that Groom, cannot identify any conduct by the named defendants indicating they treated her differently because of her sex. As discussed above, Groom's claim rests on the assertion that defendants' responses to the incident and her reaction to it were motivated by her sex.

The Court finds that Groom has not presented evidence from which a reasonable juror could conclude that defendants responded differently to the alleged incident because of Groom's sex. Although Groom contends that defendants' responses, such as doubting her claims about the substance she sat in and minimizing her disease exposure concerns, were motivated by her sex, she points to no statements by any defendant that might reflect—explicitly or implicitly—that her sex influenced their actions.

Groom also fails to point to any comparable incident involving a male correction officer in which officials reacted differently. While such evidence is not required to prove her claim, Groom has not shown such facts or any others sufficient to allow a jury to infer that defendants acted based on her sex. Similarly, her complaints about defendants' handling of her paid time off, vacation time, and workers' compensation request do not include any evidence that creates an inference that defendants' conduct occurred because of her sex. Accordingly, Groom has not established a *prima facie* case in this respect as well.

### iii.    Legitimate, Non-Discriminatory Reasons

Defendants argue that even if Groom were to present a *prima facie* case, they had legitimate, non-discriminatory reasons for their employment decisions, reasons they believe she cannot refute. When a Title VII plaintiff makes out a *prima facie* case, "the burden shifts to the [defendant] to 'articulate some legitimate, nondiscriminatory reason' for its adverse action." *Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir.), *cert. denied sub nom. The Golub Corp. v. Elaine Bart*, 145 S. Ct. 173 (2024) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015)). "The defendant's burden 'is one of production, not persuasion,' and 'can involve no credibility assessment.'" *Cintron v. Atticus Bakery, LLC*, 242 F. Supp. 3d 94, 101 (D. Conn. 2017) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).

Defendants contend that they had legitimate, non-discriminatory reasons for each action about which Groom complains. The inmate conduct underlying the incident was not treated as aggravated harassment because the evidence showed no inmate threw or deliberately aimed the offending material at Groom. Consequently, the conduct did not meet the policy definition of 'aggravated harassment' and could not be punished as such. When DOCCS employees referred to the liquid as "water," no testing had yet been performed, and the employees did not know

otherwise.  Defendant Purdy initially marked some of Groom's paperwork as non-conforming because it failed to meet required standards.  Groom's delayed restoration to payroll resulted from the slow processing typical of state bureaucracy, not any particular animus.  Finally, the record does not support Groom's allegations concerning supervisors' conduct during phone calls, investigators' attitudes, or defendants' involvement in denying her workers' compensation claim.

Groom offers no substantive argument to rebut defendants' explanations, relying instead on conclusory assertions that the employment decisions at issue were adverse actions motivated by discriminatory intent.  Although a plaintiff may satisfy their burden of showing pretext "by refer[ring] to the same evidence used to establish a *prima facie* case," that is only possible where such evidence "admits plausible inferences of pretext."  *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 89 (2d Cir. 2019) (internal citation omitted).  As the Court has already determined, Groom has not produced sufficient evidence to support her *prima facie* case.  She therefore cannot rely on that same evidence to undermine defendants' legitimate, non-discriminatory reasons provided.  Thus, the Court grants defendants' motion on this ground as well.

### C.   Retaliation[7]

Defendants move for summary judgment on Groom's retaliation claims under Title VII and the First Amendment,[8] arguing she cannot establish a *prima facie* case.  They contend that

---

[7]  As discussed below, sovereign immunity bars Groom's retaliation claim brought under the ADA.  Hence, the Court will consider only her Title VII retaliation claim in depth.

[8]  Groom offers no substantive argument for a separate First Amendment retaliation claim.  Instead, she appears to simply apply the transitive property from her Title VII retaliation claim.  *See* Dkt. No. 59 at 16–22.  The only reference to the First Amendment in Groom's opposition is a parenthetical citation to *Goonewardena v. New York Workers' Comp. Bd.*, 258 F. Supp. 3d 326, 344 (S.D.N.Y. 2017), where she claims that "First Amendment retaliation claims" are treated "the same as Title VII" claims.  *See* Dkt. No. 59 at 19.  However, *Goonewardena* does not discuss the First Amendment, nor do the facts of the case suggest any relevant connection.  The Second Circuit has "outlined the standard for assessing when the speech of a public employee is protected from retaliation by the First Amendment."  *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 114 (2d Cir. 2011).  This standard "entails two inquiries: (1) whether the employee spoke as a citizen on a matter of public concern and, if so, (2) whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public."  *Id.* (internal citations omitted).  To survive summary judgment on a First

the only protected activities she identifies, a grievance and an EEOC complaint, were filed after the alleged adverse actions, precluding a claim of retaliation.  In any case, they argue, Groom cannot show a causal connection between any protected activity and the alleged retaliation.  Plaintiff counters that she engaged in various protected activities and that defendants responded by creating a hostile work environment and constructive discharge.  She further asserts that the post-complaint conduct continued earlier harassment and reflects retaliatory animus.

"To make out a *prima facie case* of retaliation, a plaintiff must demonstrate that '(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'"  *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)).  A plaintiff may assert a retaliation claim "so long as [she] can establish that [she] possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law."  *Luzunaris v. Baly Cleaning Servs.*, 2024 WL 3926708, at *21 (S.D.N.Y. July 29, 2024), *report and recommendation adopted sub nom. Luzunaris v. Baly Cleaning Servs. Inc.*, 2024 WL 3925919 (S.D.N.Y. Aug. 22, 2024) (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).

"[P]rotected activity need not 'rise to the level of a formal complaint in order to receive statutory protection[.]'"  *Ouderkirk v. Rescue Mission All. of Syracuse*, 2023 WL 8781992, at

---

Amendment retaliation claim, a public employee "must bring forth evidence showing that [s]he has engaged in protected First Amendment activity, [s]he suffered an adverse employment action, and there was a causal connection between the protected activity and the adverse employment action." *Id.* (quoting *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007)).  At that outset, this claim appears to have already been dismissed by the party's stipulation.  *See* Dkt. No. 30 ¶ 7 (dismissing "[a]ll claims asserted against Defendant DOCCS in Plaintiff's Third Cause of Action 'For Retaliation under 42 U.S.C. § 1983 and The First Amendment'").  Regardless, even assessed on the merits, Groom fails to establish any argument, let alone any evidence, that she engaged in protected First Amendment activity.  The claim is dismissed.

*13 (N.D.N.Y. Dec. 19, 2023) (Suddaby, J.) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)). Protected activities may encompass "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Id.* (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).

The Court's first inquiry is whether and when Groom engaged in protected activity. As a general matter, she sees retaliation in defendants' response to her report that she sat in a bodily fluid produced by an inmate. Groom alleges that she engaged in protected activity by complaining that defendants did not believe her diagnosis and mistreated her by doubting that she sat in male bodily fluids. Defs.' Facts ¶ 41. She adds that retaliation occurred when defendant Rifflard told her that "the substance was only water and that Plaintiff would owe Defendants money when this was 'determined,' even if Plaintiff's Workers Compensation claim was approved." Pl.'s Facts ¶ 41. In response to defendants' assertion that she could not explain at her deposition how she opposed any unlawful employment practices, Groom points out that she "testified that Defendants discriminated against her based on her sex by, *inter alia*, discounting her affirmative, truthful statements to them about the incident and the injuries she suffered because of it and Defendants' disrespectful treatment of her." *Id.* ¶ 42.

The Court finds that a reasonable juror could not conclude Groom's report of an inmate-related incident is a protected activity. Plaintiff does not allege that she complained about conduct by coworkers or supervisors that violated Title VII. Rather, she complains that they did not respond to her complaints about illegal conduct by an inmate. Plaintiff does not contend that the inmate's activity violated Title VII, and she could not. Thus, Plaintiff does not point to any protected activity in her complaints to her supervisors about an inmate leaving bodily fluids on a

24

chair in the area she supervised.  Their response to that report cannot be retaliation for engaging in any protected activity.  Even assuming that Groom satisfied this requirement, she still fails to demonstrate a materially adverse action or establish a causal connection between her complaints about the inmate's conduct and any adverse action by defendants.

The parties agree that Plaintiff filed a complaint with the EEOC on February 7, 2022.  *Id.* ¶ 39.  They also agree that she filed a grievance against defendants Huckaba, Purdy, Cady, Brugger, Melecio, Rifflard, and Hengerle on April 26, 2022.  Both sides agree that these activities could qualify as protected activity.  The Court finds the February date as the first date on which Plaintiff engaged in protected activity.  Plaintiff thus cannot rely on any conduct by the Defendants before February 7, 2022, to support her retaliation claim.

As courts have noted, "[t]o prove a causal connection, a plaintiff must show that 'but for' the protected activity, the adverse action would not have been taken." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024).  Put simply, timing matters.  In *Sharikov*, the plaintiff claimed he was fired for complaining to managers, the company's complaint line, and the EEOC.  However, the pleadings made clear that he was discharged for refusing to comply with company-wide vaccination policies announced in October 2021, which required vaccination by February 2022, unless exempted.  The policy was communicated before the plaintiff engaged in any protected activity, which began only in November 2021, after the vaccination deadline was already set.  Thus, the allegations demonstrated that the plaintiff was terminated for failing to comply with the policy, not because of any protected activity.  *Id.* at 171.

Similar principles apply to the conduct described in this matter, none of which supports a retaliation claim.  While it is true that some conduct occurred after February 7, 2022—namely, the ongoing investigation detailed in the Office of Special Investigations ("OSI") Report, Dkt.

No. 53-65—this does not change the analysis. The report shows that the investigation into the August 16, 2021 incident continued beyond that date. Investigators interviewed Groom, other officers, and inmates, examined physical evidence, and conducted DNA testing on Groom's clothing. *Id.* at 1–5. They ultimately identified an inmate as involved with the material in question and concluded that Groom's claim was "substantiated." *Id.* at 4. However, Investigator Melissa Fichera reported that no charges would be filed against the inmate. *Id.* at 5.

Groom cites the investigation and the decision not to charge the inmate as evidence of an adverse employment action. Even though the investigation extended beyond the date Groom filed her EEOC complaint and grievance, the Court is not persuaded that it amounts to evidence a reasonable juror could use to find an adverse employment action in support of a retaliation claim.

"In the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII." *Id.* "To prove a causal connection, a plaintiff must show that 'but for' the protected activity, the adverse action would not have been taken." *Sharikov*, 103 F.4th at 170.

The causal connection cannot be established on this record. OSI's investigation commenced before Groom engaged in any protected activity. Nothing in the record indicates that the investigation was halted, altered, or otherwise influenced because of her protected

activity.  Nor do Groom's opposition papers offer any meaningful discussion of the investigation or present a causal link.

The Court's independent and thorough review of the record reveals that investigators undertook substantial efforts to verify Groom's claims regarding liquid.  The investigation substantiated those claims and identified the inmate involved.  And the resulting report detailed the rationale for the decision not to bring charges against the inmate.  Under these circumstances, the Court finds that no reasonable juror could conclude that a reasonable person would be dissuaded from reporting her treatment based on the conduct or outcome of the investigation.

Groom argues that the temporality between her February 2022 EEOC charge, the April grievance, and her alleged constructive discharge can be evidence sufficient to avoid summary judgment on a retaliation claim.  Courts have concluded that "[t]he temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a *prima facie* case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext."  *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010).  As the Court has explained, Groom has no evidence a jury could use to conclude she was constructively discharged.  As such, she cannot rely on a constructive discharge to establish a causal link necessary to establish a *prima facie* case.

The Court therefore finds that Plaintiff has failed to produce evidence to support her retaliation claim and will grant the motion in this respect as well.[9]

---

[9]  Defendants also assert that they are entitled to qualified immunity on Groom's constitutional claims.  Because the Court has found no reasonable juror could conclude defendants violated Groom's constitutional rights, the Court declines to address the issue of qualified immunity.

### D.    Fourteenth Amendment Claims

Defendants also seek dismissal of Groom's Fourteenth Amendment equal protection

claims.  *See* Dkt. No. 53-1 at 46–48.

The Fourteenth Amendment's Equal Protection Clause "protects . . . employees from sex-

based workplace discrimination, including hostile work environments and disparate treatment."

*Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).

"Equal protection claims under § 1983 are analyzed under same standards as Title VII

discrimination claims."  *Barrer-Cohen v. Greenburgh Cent. Sch. Dist.*, 2019 WL 3456679, at *9

(S.D.N.Y. July 30, 2019) (citing *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)); *see*

*also Stoutenger v. City of Fulton*, 605 F. Supp. 3d 432, 456 (N.D.N.Y. 2022) ("Section 1983

employment discrimination claims asserted as equal protection violations are evaluated under the

same standards as Title VII claims.") (McAvoy, J.) (quoting *Chick v. Cnty. of Suffolk*, 546 F.

App'x. 58, 59 (2d Cir. 2013) (summary order)).  These claims are also subject to the burden-

shifting framework set forth in *McDonnell Douglas*.  *Chick*, 546 F. App'x at 59 (citing *Sorlucco*

*v. N.Y.C. Police Dep't*, 888 F.2d 4, 7 (2d Cir.1989)); *see also Streichert v. Town of Chester*, 2022

WL 4449305, at *6 (S.D.N.Y. Sept. 23, 2022) (same).

The only mention of any Fourteenth Amendment claim in Groom's opposition brief

appears in the "preliminary statement":

> Plaintiff opposes the motion as to . . . her claims under the Fourteenth
> Amendment due to "sex discrimination and gender bias" at Wallkill Correctional
> Facility (hereinafter "Wallkill").

Dkt. No. 59 at 2.

Groom entirely fails to address the substance of any Fourteenth Amendment claim in any

way in her brief, much less respond to defendants' arguments for dismissal of these claims.  *See*

*id.* at 5–11.

"Merely offering a 'conclusory assertion that the complaint ha[s] stated a claim for each and every cause of action' constitutes 'failure to meaningfully discuss' the opposing party's arguments supporting a finding of abandonment." *Greene v. Northwell Health Inc.*, 2024 WL 4287875, at *9 (E.D.N.Y. Sept. 25, 2024) (Choudhury, J.) (quoting *Ndemenoh v. Boudreau*, 2023 WL 6122852, at *5 (S.D.N.Y. Sept. 19, 2023)); *Farag v. XYZ Two Way Radio Serv., Inc.*, 2023 WL 2770219, at *2 (2d Cir. Apr. 4, 2023) (summary order).

"[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *D.J. by Comfort v. Corning-Painted Post Area Sch. Dist.*, 722 F. Supp. 3d 148, 165 (W.D.N.Y. 2024), *reconsideration denied,* 2024 WL 5244392 (W.D.N.Y. Dec. 30, 2024); *see also Brown v. S. Shore Univ. Hosp.*, 762 F. Supp. 3d 191, 204 (E.D.N.Y. 2025) (noting this circuit has deemed plaintiffs to have abandoned claims they failed to argue in response to a summary judgment motion) (citing *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 257 (2d Cir. 2024)).

By not addressing the merits of the claim in opposition to defendants' motion, Groom has abandoned any equal protection claim, warranting its dismissal.

Even were the Court to assume Groom has not abandoned her Fourteenth amendment claim, it would appear that any such claim "is premised on the same grounds as her Title VII claims[,] and thus rises and falls with her Title VII claims." *Fay v. City of Newburgh*, 2024 WL 4169552, at *8 (S.D.N.Y. Sept. 12, 2024). Accordingly, for the reasons articulated above warranting dismissal of Groom's Title VII claims, Groom's equal protection claim likewise fails. *See Hoit v. Cap. Dist. Transportation Auth.*, 805 F. App'x 41, 45 (2d Cir. 2020) (summary order) (affirming dismissal of § 1983 sexual harassment claim for the same reasons as Title VII claims); *see also White v. Dep't of Corr. Servs.*, 814 F. Supp. 2d 374, 392 (S.D.N.Y. 2011) ("summary

judgment has been denied with respect to the plaintiff's Title VII claim . . . and thus summary judgment must also be denied with respect to the plaintiff's § 1983 claim arising from this incident").

The Court grants Defendants summary judgment on Plaintiff's equal protection claim.

### E.    ADA Claims

Defendants next seek dismissal of Groom's claims brought under the ADA.  They assert that Groom's claims for discrimination and retaliation, brought here solely against DOCCS, are barred by sovereign immunity.  In any case, defendants argue, Groom has produced no evidence a jury could use to find for her on these claims.  Though she argues that she has presented a *prima facie* case for disability discrimination, *see, e.g.*, Pl.'s Resp., Dkt. No. 59 at 16, Groom states in her response that she "does not oppose the motion for her claims against DOCCS under the ADA, the NYSHRL. [sic]" *Id.* at 2.

Claims of employment discrimination based on disability arise under Title I of the ADA. *See Yerdon v. Poitras*, 120 F.4th 1150, 1153 (2d Cir. 2024) ("the ADA 'unambiguously limits employment discrimination claims to Title I'") (quoting *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 169–71 (2d Cir. 2013)).  "[I]t is well-established that Congress has not validly abrogated the states' sovereign immunity for claims arising under Title I[,] [n]or has New York waived its immunity." *Yerdon v. Poitras*, 120 F.4th 1150, 1153–54 (2d Cir. 2024) (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001) and *Nicolae v. Office of Vocational & Educational Services for Individuals with Disabilities*, 257 F. App'x 455, 457 (2d Cir. 2007)).  Accordingly, sovereign immunity bars Groom's Title I claims against DOCCS. Groom's claim of disability-based retaliation is similarly barred, as a Title V retaliation claim arising solely from Title I rights cannot be brought against the state. *Yerdon*, 120 F.4th at 1154–

55. Moreover, Title I does not permit suits against individual employees. *Id.* at 1157.

Therefore, Groom has no viable ADA claims that can survive summary judgment, and the Court

will grant the motion on this basis as well.

**F.    State Law Claims**

The Court has broad discretion to decline to exercise supplemental jurisdiction where it

has dismissed all claims over which it had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

"Courts must consider 'the values of judicial economy, convenience, fairness, and comity' when

deciding whether to exercise supplemental jurisdiction." *Kroshnyi v. U.S. Pack Courier Servs.,*

*Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343,

350 (1988)). "[I]f a plaintiff's federal claims are dismissed before trial, 'the state claims should

be dismissed as well.'" *Brzak v. United Nations*, 597 F.3d 107, 113–114 (2d Cir. 2010) (quoting

*Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)).

In the interests of judicial economy and fairness to the parties, the Court declines to

exercise jurisdiction over Groom's state-law claims.[10]  Such dismissal is without prejudice to re-

filing in an appropriate state forum.  The Court notes that "CPLR § 205(a) provides that when a

claim is dismissed without prejudice, the party has six months after dismissal to commence a

new action based on the same transaction or occurrence, even if the statute of limitations has

run." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 281 (S.D.N.Y. 2007)

(quoting *Houston v. Fid. (Nat. Fin. Servs.)*, 1997 WL 97838, at *11 (S.D.N.Y. Mar. 6, 1997)).

**V.    CONCLUSION**

Therefore, it is

**ORDERED** that

---

[10]  The Court declines to address Groom's disability discrimination claims because of sovereign immunity and has
not addressed Defendants' substantive arguments on that issue.

1. Defendants' motion for summary judgment (Dkt. No. 53) is **GRANTED**;

2. Plaintiff's federal claims are **DISMISSED with prejudice**; and

3. Plaintiff's state law claims are **DISMISSED without prejudice**.

The Clerk of Court is directed to terminate the pending motion (Dkt. No. 53), enter a judgment accordingly, and close the case.

     **SO ORDERED.**

Dated: September 29, 2025

Anthony J. Brindisi
U.S. District Judge